Parsons, S. J.
We propose, in the consideration of the several specifications of error assigned and argued by the counsel for the appellant, to notice so much of the several raised as we deem essential to a just and equitable determination of the question in controversy.
The objections urged to the admissibility of the testimony of Good, Ida!, Coelcs, anil Gatlin are based upon the same grounds.
The petition alleges that the plaintiff was lawfully possessed of the two negro slaves in controversy for life as of his own property, and that “the defendant got possession of said negro slaves unlawfully and against plaintiff’s free will.”
Tlie depositions of Good, although not relating directly to the issue under the pleadings, go to show the inception of the whole transaction, and the intent of the party by whom the trespass was alleged to have been committed.
The admission of the evidence of facts which happened before and after the principal transaction, yet which have a direct relation to the main subject in controversy, is not a violation of the rule cited by the counsel for the appellant, which requires the evidence “to be strictly confined to the point at ii-suo,” for it is a rule of law equally well established that, in cases in which the knowledge or intent of the party is a material fact on which the evidence, apparently collateral and foreign to the main subject, has a direct bearing, it is admissible. (1 Greenl. Ev., § 53; Gresley’s Eq. Ev., p. 163.)
As to the testimony of the other deponents, it cannot be maintained that it was not responsive to the issue, as it goes to show the commission of the very act complained of; that the property was taken from the possession of the plaintiff “ without his free will,” and under circumstances which disclose that the apprehensions of the plaintiff for his personal safety were not altogether groundless.
The counsel for the defendant moved the court to exclude from the jury all the evidence of the plaintiff concerning duress, threats, &c., inasmuch as they were not specially pleaded, and for other reasons set forth in said motion. We are of opinion that the court below did not err in overruling this motion; *145 for it is a ru>j of law that those who are called upon to answer whether a particular act was done may declare such material circumstances as affects its essence or validity.' In tiio case of Bradford’s Heirs v. Brown, 11 Mart. La. R., 217, it is stated that Abelard Bradford, one of the plaintiffs, being called upon to acknowledge or deny his ancestor's signature to the deed of sale and agreement, on an interrogatory put to him on the part of the defendant, admitted it; but added, these documents were signed while his ancestor was under duress and through the menaces and threats of A. Blanchard and others. The defendant urged upon the District'Court that that part of the answer which contains the answer of duress ought to be stricken out, not being called for hi the interrogatories.
The Supreme Court of Louisiana, whilst upon this point, held that “ the District Court veiy properly refused to strike it out,” and added that “he who is called upon to answer whether a particular act was done may declare such material circumstances as affects its essence or validity. Nothing is moro of the essence of the execution of an act than the freedom of the party executing it, and the ends of justice cannot be answered unless those who are called upon to administer it be informed of any circumstance which so materially affects it as violence.’’
With what peculiar force does this strong and conclusivo reasoning apply to the ease under consideration. The plaintiff alleges that tile negroes were taken “without Ills free wil.l,” and the evidence establishes most conclusively the material fact of the want of freedom on the part of the plaintiff in the execution of the bill of sale; and how, ue might ask, in this case, could the ends of just ire be answered if any circumstances which so materially affects it as violence was excluded from our consideration ?
The counsel for the appellant urge's wit h some plausibility that to have made the testimony admissible the plaintiff should have specially utplied to defendant's plea of title, that it had been obtained by duress; but it Is nowhere in. evidence that the defendant held under a title from the plaintiff. The fU9©J whole tenor of the testimony goes to show the defendant's active participation in the conversion of the property; and. although it “details the acts of persons other than the defendant,” yet it discloses that lie was a particepe crim-inis to the whole transaction, and was consequently amenable for any act which was the result of the combination of others together with himself.
Under the 2d assignment of error the. counsel for tlte appellant contends that the verdict of the jury was contrary to law and evidence in this, that the plaintiff was estopped by liis bill of sale from disputing defendant's title ; and, in the 5th assignment of error that the court erred in rejecting defendant’s title under the issue formed by the. pleadings.
If tiie exclusion from the. jury of the defendant’s plea of title was in accordance with correct principles of law, the plea of estoppel in avoidance of the plaintiff’s claim was not available.
In the defendant’s answer to the original petition he claims the property in himself, and the only title attempted to be set up on the trial was a copy of a bill of sale from Reynolds to Shropshire.
There was no evidence that the defendant held under Shropshire, and the copy of the bill of sale offered could not sustain the plea of title in himself, and as there was no averment of title in any one else, it was not admissible under our practice to introduce new affirmative matter. (Vide Mims v. Mitchell. 1 T. R., 443.)
The recognition of the validity of the bill of sale from Reynolds to Sin-op-shire could notin any aspect of the case estop the plaintiff from settingup matter in avoidance of the, defendant’s plea of title, for it. is a doc.rriu” dearly defined in the case of Vooght v. Winch, 2 Bard. & Ald. R., cited in 2 Smith's L. C. n. and reaffirmed in the subsequent adjudications of the court Of King’s bench, that “an estoppel by deed must be pleaded, otherwise the party omitting to pleat! id waives the estoppel, and the jury must find the truth.”
*146 Tim necessity oí a special plea to conclude a party by an estoppel is fully sustained in the case of Mims v. Mitchell, 1 Tex. R., 443, where it was held “ that new matter which is in avoidance of the cause of action must be specially pleaded.”
The wisdom and sound policy of the ancient rule of estoppels as defined by Lord Coke, where a man is precluded by his own act from saying “that that which, by the intervention of himself or his, has once become .accredited for the truth, is false,” is too well settled to admit of any relaxation except upon the most glaring and conclusive evidence of fraud or duress.
It is a principle of both the common and civil law that a man may avoid his own act if (he execution of the act was extorted by compulsion or threats. The contract under such circumstances is invalidated or voidable, and the rule rests upon the broad and equitable basis that tlie consent by which agreements are formed ought to be free.
*• When,” says Pothier, “ the violence is committed by the person with whom I contract, or by his participation, the agreement is not binding either by the civil law or even by tlie law of nature, for, supposing there resulted any obligation from me to yon in consequence of my consent extorted by violence, the injustice, committed by you iu exercising that violence obliges you to indemnify me for the injury 1 suffer hy it, and that indemnity consists iu discharging me from the obligation which you have obliged me to contract.”
This is tlie reason given by Grotius de jure beli, lib. 2, e. 11, n. 7. (See 1 Pothier on Obligations, p. 22.)
Iu tlie case of Mansel, Adm’r, v. Israel, 3 Bibb R., 510, it was held by Chief Justice Boyle, in an action for the recovery of slaves, that the defendant’s intestate having obtained possession of the slaves from the plaintiff by means of a fraudulent contract, the plaintiff could, notwithstanding the contract, maintain the action for the recovery of the slaves upon proof of tlie fraud.
It is alleged in the 3d assignment of errors that “ the court should have granted a new trial on the ground that the damages were excessive, in this, that the jury gave a verdict for the value of the negroes and damages as hire during (lie pendency of the suit, which the plaintiff's were not entitled to recover.” The counsel for the appellant elaborately contends that the measure of damages is purely a question of law, which it is the duty of the court to charge the jury upon, and that the jury are to ascertain the measure and amount of damages according to the rules of law to be furnished them by the court.
Where, no aggravation is shown, the principle as laid down by the counsel for' tlie appellant is correct. In actions ex contractu or ex delicto, whether for the breach of contract or the violation of a right, if no evil motive be imputed, tlie amount of compensation is as much a matter of law as tins rights itself, and can with no greater safety be submitted to tlie vague and fluctuating discretion of tins jury,
But the rule has been established and fully recognized by this court in tlie ease of Smith v. Sherwood, 2 Tex. R., 460, that ii) actions of tort or trespass for talcing goods, where it is clearly in evidence that the injury was accompanied by oppression, fraud, malice, or negligence so gross as to raise a pre-.-uniptiou of malice, the jury have discretion to award exemplary or vindictive damages. In trials at common law tlie jury are tlie proper judges of damage, mid where there is.no certain measure of damages the court will not ordinarily disturb their verdict, unless on grounds of prejudice, passion, or corruption in the jury. (2 Greenl. Ev., sec. 225.)
However well settled tlie rule may be. it is a power confided to tlie discretion of tlie jury, under circumstances calculated to provoke its abuse1, which should he scrupulously exercised and rigorously guarded by tlie vigilance of tlie courts from those influences which so frequently warp the judgment, sway the passions, and pervert tlie pure administration of justice.
In tlie application of this rule to tlie case under review it is clear that the conversion of tlie property was attended by circumstances that might *147 have reasonably influenced the jury to inflict some degree of exemplary damages, and tlie defendant cannot complain that tlie verdict was contrary to law when merely for tlie value of the negroes and hire during' the pendency of tlie suit.
But it is contended by the counsel for tlie appellant that hire could only originate upon contract, and could not be taken into the estimation of damages ; but it is a rule of law, where the plaintiff lias been deprived of the use of liis property by tlie act complained of, that the value of tlie use during; such period is to be taken into the estimation of damages. (Warfield v. Walter, 11 Gill & Johns. R., 80; 2 Greenl. Ev., sec. 635.)
It was field in an action of trespass in the case of Beals v. Guernsey, 8 Johns. R., p. 440, “that tlie plaiutlif ought not to be deprived of his property for years without compensation for the loss of the use of it, and the jury had a discretion to allow interest as damages. It lias been allowed in actious of trover, and the same rule applies when brought for the recovery of property.” Tlie same rule was held by Justice Warner in an action for tlie conversion of negroes, that the value of their labor in addition to the value of tlie property from the lime of conversion was the rule of damages. (Schley v. Lyon & Rutherford, 6 Ga. R., 530.)
But tlie rule established by this court is found in the case of Robins v. Walter, (2 Tex. R., p. 130.) where tlie action was brought, as in this case, for tlie recovery of a negro and damages for detention. Justice Lipscomb held “ that where suit was 'brought to recover the specific property and damages for its detention, if tlie property sued for be a slave, damages for hire shall he computed from the time of the demand to the rendition of judgment; if no special demand is proven, the service of the writ is the time from which damages should be. computed.”
It is urged that the verdict is defective for uncertainty. It has been held by this court in the ease of Burton et al. v. Bondies, et al., (2 Tex. R., p. 205.) that tlie test of tlie sufficiency of a verdict is this, is it so certain that tlie court can give judgment upon it? It is conceded by tlie appellant’s counsel that tlie verdict for tlie hire of Tom is sufficiently certain; this is manifestly tlie case, and although tlie jury failed to render their verdict for the hire of Ephraim with tlie same degree of precision, yet as the petition alleges and the evidence shows that both were taken at one and tlie same time, it is a clear deduction that it was tile intention of the jury that hire should he computed for both for tlie same period.
According to the principles controlling the sufficiency of verdicts in the case of Burton v. Anderson. (1 Tex. R., p. 130,) and also in the case of Burton et al. v. Bondies, et al., (2 Tex. R., p. 205,) the intention of the jury was clearly manifest, and their verdict being sufficiently certain to give judgment upon it, it was the “duty of the court,” as was said in the case of Pickett v. Rechet, (2 Bibb, p. 178,) “to work and mould it into form according to tlie real justice of tiie case.”
Lastly, it is contended that “the judgment is erroneous in this, that it does not conform to the verdict, which gives to tlie plaintiff tlie value of the negroes and damages for their detention and hire, but is in the alternative, and does not conform to and follow tlie issues under the pleadings.”
In tlie ease of Moore v. The Republic of Texas, (1 Tex. R., 563,) it was bold that there was no error in the judgment, which provided that the amount recovered might he discharged in the promissory notes of the Republic, when the verdict was for so many dollars, without reference to the currency. This variance of the judgment did not vitiate the essence of the original vorilict, and as it was added, as in llie case under review, for tlie benefit of the defendant, it constituted no ground for tlie reversal of tlie judgment.
The rule of common law in actions in detinue, where judgment was for tlie plaintiff’, is in tlie alternative; also damages for detention and full costs of suit. Tlie nature of the action required that tlie verdict, and judgment be such that a *148 specific remedy be bad for the recovery of the goods detained or a satisfaction in value in ease they cannot be returned. (1 Dall. R., 458; 1 Chitty’s Pl., 121.) And as in the case of Robin’s Adm’r v. Walters, (2 Tex. R., 139,) where it was held that it was no hardship for the jury to assume tiie highest amount, because the party can relieve himself from payment by accepting tiie alternative and giving up the property sued for, so in this it was competent for the court to amend the verdict by decreeing the recovery of the property or the value thereof; and as this is purely for the benefit of the defendant, who has his election to conform to the original verdict or return tiie property, it constitutes no just ground for the reversal of tiie judgment. Wherefore it is ordered, adjudged, and decreed that the judgment of the court below be in all tilings affirmed.
Judgment affirmed;